# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Lukeus Scott, | **ORDER GRANTING** |
| | **DEFENDANTS' MOTION FOR** |
| Plaintiff, | **SUMMARY JUDGMENT** |
| vs. | |
| | Case No. 1:18-cv-073 |
| Hydra-Walk, Inc.; and | |
| Key Energy Services, Inc. d/b/a | |
| Hydra-Walk, Inc., | |
| Defendants. | |

Before the Court is Defendants Hydra-Walk, Inc. and Key Energy Services, Inc. d/b/a Hydra-Walk, Inc.'s motion for summary judgment filed on December 13, 2018. See Doc. No. 19. The Plaintiff filed a response to the motion on February 1, 2019. See Doc. No. 31. The Defendants filed a reply on February 13, 2019. See Doc. No. 34. For the reasons set forth below, the motion for summary judgment is granted.

## I. BACKGROUND

The Plaintiff, Lukeus Scott, has alleged claims for products liability/strict liability and negligence, asserting his employer Key Energy Services, Inc. ("Key Energy") is bound by successor liability to answer for the design, manufacture, sale, and leasing of a Hydra-Walk system, which he alleges was defective and unreasonably dangerous.

Hydra-Walk, Inc. ("Hydra-Walk") designed and manufactured the Hydra-Walk pipe-handling system which was utilized by the oil and gas industry to pick up and lay down pipe. The Hydra-Walk system consists of a pipe-sled and ramp on a platform which is raised and lowered by

1

hydraulics, all controlled by an operator who stands on the ground at the control panel of the Hydra-Walk system and manipulates the controls.

On June 12, 2013, Key Energy employed Lukeus Scott as a Hydra-Walk system operator. At no time was Scott employed by Hydra-Walk. On June 24, 2013, Scott sustained injuries while working at an equipment yard near Dickinson, North Dakota. He was performing maintenance tasks on a Hydra-Walk system when it became unstable and overturned, crushing him. As a result, Scott alleges he sustained severe injuries to his spine, right hand, legs, and internal organs.

Key Energy was Scott's employer at the time he suffered injuries caused by the Hydra-Walk system. As a result of a 2008 purchase agreement, Key Energy and Hydra-Walk merged. Key Energy is the surviving entity and Hydra-Walk ceased to exist as a separate entity. Key Energy now owns the equipment and patents it acquired as a result of the merger with Hydra-Walk. After the merger, the Hydra-Walk system was no longer manufactured. Key Energy continues to provide Hydra-Walk pipe-handling services, by renting the Hydra-Walk units and supplying the employees necessary to operate them for use on Key Energy drilling rigs as well as competitors' drilling rigs. The Hydra-Walk unit that injured Scott was designed, manufactured, and sold or leased by Hydra-Walk, prior to the 2008 merger of Key Energy and Hydra-Walk. At no time did Key Energy design or manufacture the Hydra-Walk system.

Key Energy has maintained workers compensation coverage continuously since commencing operations in North Dakota in 1998. See Doc. Nos. 23-24. Key Energy reported Scott's injury to North Dakota Workforce Safety and Insurance ("WSI") on June 25, 2013. WSI accepted Scott's injury claim and awarded benefits under Key Energy's employer account to Scott. See Doc. No. 23-7. Scott accepted WSI benefits. Scott alleges he has been unable to work since

the accident, receiving partial wage loss payment for the past five years and continuing to this day. As of June 12, 2018, WSI made payments on Scott's claim in the amount of $341,537.13. See Doc. No. 23-8. The Defendants now move for summary judgment, asserting Scott's claims are barred under statutory immunity.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response

must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587. The Court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. Because the Court's authority over the claims alleged is based on diversity jurisdiction, the substantive law of North Dakota applies. Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1047 (D.N.D. 2006).

### III.   LEGAL DISCUSSION

The purpose of workforce safety and insurance law in North Dakota is to ensure certain relief for workplace injuries, regardless of questions of fault. See N.D. Cent. Code § 65-01-01. Thus, an employer may not employ any person in a hazardous employment without first applying for workforce safety and insurance coverage for the protection of its employees. N.D. Cent. Code § 65-04-33. If the employer secures "the payment of compensation to that employer's employees by contributing premiums to the fund, the employee . . . do[es] not have a claim for relief against the contributing employer . . . for damages for personal injuries, but shall look solely to the fund for compensation." N.D. Cent. Code § 65-01-08. Thus, when the employer is in compliance with the workers' compensation statutes, the employee's exclusive remedy against the employer is limited to recovery under the workers' compensation statutes (the "exclusive remedy rule"). See Smith v. Vestal, 494 N.W.2d 370, 373 (N.D. 1992); see also N.D. Cent. Code § 65-05-06 ("The payment of compensation or other benefits by the organization [WSI] to an injured employee . . .

are in lieu of any and all claims for relief whatsoever against the employer of the injured or deceased employee."). To that end, civil claims for workplace injuries are generally barred. See N.D. Cent. Code § 65-01-01; see also N.D. Cent. Code § 65-04-28 ("Employers who comply with the provisions of this chapter shall not be liable to respond in damages at common law or by statute for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund."). "The sole exception to an employer's immunity from civil liability under this title . . . is an action for an injury to an employee caused by an employer's intentional act done with the conscious purpose of inflicting the injury." N.D. Cent. Code § 65-01-01.1. Because Scott does not claim his injuries were intentionally caused by Key Energy, this exception does not apply.

There is no dispute that Key Energy is a "contributing employer," or that it was in compliance with the workers' compensation statutes. Key Energy has maintained workers' compensation coverage since it first commenced operations in North Dakota in 1998, which includes coverage for Scott. It reported Scott's injury to WSI on June 25, 2013, the day after his injury occurred. WSI accepted Scott's injury claim and awarded him benefits under Key Energy's employer account. Scott accepted WSI benefits and has received payments from WSI. As of June 12, 2018, WSI made payments on Scott's claim in the amount of $341,537.13. Accordingly, any claim Scott asserts against his employer, Key Energy, is clearly barred by the exclusive remedy rule.

North Dakota's workers' compensation laws, however, do not prevent the injured employee from bringing claims against a third-party tortfeasor:

> When an injury or death for which compensation is payable under provisions of this title has been sustained under circumstances creating in some person other than

> the organization a legal liability to pay damages in respect thereto, the injured employee, or the injured employee's dependents may claim compensation under this title and proceed at law to recover damages against such other person.

N.D. Cent. Code § 65-01-09. Scott argues Hydra-Walk is a third-party tortfeasor. However, because Hydra-Walk ceased to exist as an entity due to the merger with Key Energy, it can no longer be a party to suit. See N.D. Cent. Code § 10-19.1-102(2) (When a merger becomes effective: "The separate existence of all constituent organizations except the surviving organization ceases. . . . As to any corporation that was a constituent organization and is not the surviving constituent organization, the articles of merger serve as articles of termination, and unless previously filed, the notice of dissolution."); see also Jones v. Billings County School Dist. #1, 568 N.W.2d 477, 479 (N.D. 1997) (identifying limited circumstances under which suit against a dissolved corporation is appropriate—none of which apply here).

Scott argues Key Energy assumed Hydra-Walk's liabilities when it acquired Hydra-Walk, including claims against Hydra-Walk for the design, manufacture, sale, and leasing of Hydra-Walk systems. The North Dakota Supreme Court has said:

> The long-established general rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. There are, however, four well-recognized exceptions to the general rule under which liability may be imposed on a purchasing corporation:
> . . .
> 2. Where the transaction amounts to a consolidation or merger of the two corporations;
> . . . .

Downtowner, Inc. v. Acrometal Products, Inc., 347 N.W.2d 118, 121 (N.D. 1984). It is undisputed that the transaction between Key Energy and Hydra-Walk resulted in a merger of the two corporations, with Key Energy being the surviving corporation. Key Energy does not seem to

seriously contest the notion that it assumed the liabilities of Hydra-Walk. Further, for purposes of summary judgment, the Court will assume, without deciding, that Scott would have had a claim against Hydra-Walk for the design, manufacture, sale, and leasing of the Hydra-Walk system if not for merging with Key Energy. Accordingly, the question becomes whether Key Energy is immune from suit even if it assumed the liabilities of Hydra-Walk.

Scott contends the doctrine of dual capacity applies. Under the doctrine of dual capacity or dual persona,

> an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.

Latendresse v. Preskey, 290 N.W.2d 267, 270 (N.D. 1980) (internal citations omitted). *Latendresse* is the only case cited by the parties in which the North Dakota Supreme Court has addressed the dual capacity or dual persona doctrine. Specifically, the North Dakota Supreme Court examined whether the doctrine of dual capacity created an exception to the exclusive remedy provisions of North Dakota's workers' compensation laws. Id. at 269. The case involved an employee suing his employer for the injuries he sustained while installing a steel pin manufactured by the employer. Id. at 268. The employee argued his employer acted in a dual capacity, as both employer and manufacturer, giving rise to an exception to the exclusive remedy rule. Id. at 269. In arguing for the application of the dual capacity doctrine, the employee relied primarily upon a California case, *Douglas v. E. & J. Gallo Winery*, 137 Cal. Rptr. 797 (Cal. Ct. App. 1977). Latendresse, 290 N.W.2d at 270. In *Douglas*, an employee sued his employer under products liability for the injuries he suffered when the scaffolding on which he was working collapsed. Douglas, 137 Cal. Rptr. at 798. The court in *Douglas* held the employee was permitted to maintain

the action, despite the exclusive remedy rule, because the scaffolding was manufactured by the employer for sale to the general public, rather than for the employer's sole use. Id. at 803.

In discussing *Douglas*, the North Dakota Supreme Court in *Latendresse* quoted Larson's Law of Workmen's Compensation, which provides: "the preceding California case of Douglas . . . [is an] unsound application[ ] of the dual-capacity concept. [It] overlook[s] the simple fact that the use of the product was a routine and integral part of the employment. Dual capacity requires a distinct separate legal persona, not just a separate theory of liability of the same legal person." Latendresse, 290 N.W.2d at 271 (quoting 2A Arthur Larson, The Law of Workmen's Compensation § 72.80 (1976)). The Supreme Court in *Latendresse* noted that even if it followed *Douglas* and required the employer to have manufactured the product for sale to the public rather than for his employer's sole use, no evidence was presented that the steel pin involved in the accident was manufactured for sale to the public. Id. The North Dakota Supreme Court concluded:

> the [employee] failed to establish that [the employer] came within the dual capacity doctrine, or that [the employer] acted in such a manner so as to create an exception to the provisions of the North Dakota Workmen's Compensation Act, Title 65, NDCC. If we were inclined to rule in favor of [the employee] under the dual capacity doctrine as he asserts it, we would have to disregard and do violence to several provisions of the North Dakota Workmen's Compensation Act which have been set out earlier herein. We do not believe that justice will permit us to do that.

Id. at 272. The North Dakota Supreme Court affirmed the district court's grant of summary judgment to the employer. Id.

In 1982, the California legislature superseded *Douglas* by abolishing the dual capacity doctrine. See 10 Larson's Workers' Compensation Law § 113.01 (2019); Cal. Lab. Code § 3602 (2018) ("The fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or

8

her dependents to bring an action at law for damages against the employer.") Larson's Workers' Compensation Law criticizes the distinction between products manufactured by the employer solely for its own use, and those that were also sold to the public:

> For a time, both California and Ohio drew a distinction between products manufactured by the employer solely for its own use, and those that were also sold to the public, applying the doctrine only to the latter. The distinction made no sense, since what mattered was that, as to this employee, the product was manufactured as an adjunct to the business, and furnished to him solely as an employee, not as a member of the consuming public. What the employer did with the rest of its output could not change this central fact.

10 Larson's Workers' Compensation Law § 113.01 (2019). The treatise also discusses the lack of independent obligations of the employer in *Douglas*:

> The courts also lost sight of the fact that, even under the most permissive definition of dual capacity, the second set of obligations must be independent of the defendant's obligations as an employer. Here they are completely intertwined. The employer has a duty as employer to provide safe scaffolding; it has a duty as manufacturer to make safe scaffolding; if it makes unsafe scaffolding and provides it to its employee to be used in the employee's work, the two obligations are braided together so tightly they cannot possibly be separated.

Id. "In other words, it is not enough, as the court seems to think, that the second persona impose *additional* duties. They must be totally separate from and unrelated to those of the employment." Id.

*Latendresse* is the only case cited in which the North Dakota Supreme Court has addressed the dual capacity or dual persona doctrine, and it ultimately declined to apply the doctrine or create an exception to the exclusive remedy rule. Further, the *Douglas* decision—which provided the primary support for the dual capacity doctrine in *Latendresse*—has been criticized by Larson, a leading authority on workers' compensation, and superseded by California's legislature.

The Court does not believe the North Dakota Supreme Court would apply the dual capacity doctrine given the facts of this case. The Court finds Key Energy was not acting in a dual capacity as employer and manufacturer, because Hydra-Walk manufactured, designed, and sold or leased the Hydra-Walk system that injured Scott, not Key Energy. Thus, Key Energy did not occupy "a second capacity that confers on [it] obligations independent of those imposed on [it] as employer." See Latendresse, 290 N.W.2d at 270.

However, even if we assume that Key Energy, by taking on the obligations of Hydra-Walk through merger, sits in the place of the manufacturer, the Court finds no exception to the exclusive remedy rule. Scott sustained a workplace injury, as a Hydra-Walk operator, employed by Key Energy. He did not sustain an injury as a result of his use and operation of the Hydra-Walk system as a member of the general public. If that was the case, Scott would not have been entitled to the workers' compensation benefits he received under Key Energy's employer account for the past five years. Further, the duties, if any, imposed upon Key Energy by its merger with Hydra-Walk are inextricably intertwined with Key Energy's status as Scott's employer: Key Energy has a duty as an employer to provide safe Hydra-Walk units to operate, and (under this assumption) a duty as manufacturer to make safe Hydra-Walk units. The Hydra-Walk unit was a "routine and integral part" of Scott's employment, and Key Energy's duties, if more expansive than that of an employer, are not unique enough to warrant deviation from North Dakota's exclusive remedy rule.

In *Barry v. Baker Elec. Co-op., Inc.*, the North Dakota Supreme Court stated:

We do not believe that the State of North Dakota, under the threat of criminal sanction, intended to exact a premium for coverage . . . and at the same time, deny the immunity to the complying employer. *To exact such premium but not provide the concomitant immunity to the employer would constitute fraud.*

354 N.W.2d 666, 673 (N.D. 1984) (emphasis added). Key Energy applied for and received workers' compensation coverage for Scott, as was required by statute and under the threat of criminal sanctions. See N.D. Cent. Code § 65-04-33. Refusing to extend statutory immunity to Key Energy under these circumstances would result in an injustice.

North Dakota's workers' compensation system is a legislatively-created compromise for claims between injured workers and their employers. Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 453 (N.D. 1994). North Dakota's workers' compensation statutes provide an "exclusive, compulsory, and comprehensive program designed to compensate workers for injuries received in the course of their employment." U.S. Fid. & Guar. Co. v. North Dakota Workmen's Comp. Bureau, 275 N.W.2d 618, 620 (N.D. 1979). The North Dakota Supreme Court expressed concern in *Latendresse* that application of the dual capacity doctrine would "disregard and do violence to several provisions of the North Dakota Workmen's Compensation Act." The Court agrees that adoption of the dual capacity doctrine under these circumstances would undermine the purpose of workers' compensation—to ensure certain relief for workers regardless of questions of fault—and render several provisions of North Dakota's workers' compensation statutes inconsequential. See, e.g., N.D. Cent. Code §§ 65-01-01, 65-01-01.1, 65-01-08, 65-04-28, and 65-05-06. Accordingly, the Court finds the dual capacity doctrine does not apply, and the exclusive remedy rule bars suit.

## IV.     CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment (Doc. No. 19) is **GRANTED**. The Defendants' motion for hearing (Doc. No. 18) and motion to expedite

(Doc. No. 40) are **FOUND AS MOOT**.

    **IT IS SO ORDERED**.

Dated this 18th day of September, 2019.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court
